# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 7, 2021

Lyle W. Cayce
Clerk

No. 20-30176

Denise Watkins, *on her own behalf as well as all others similarly situated*,

*Plaintiff—Appellant*,

*versus*

Michael Tregre, *Sheriff and Chief Law Enforcement Officer*,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:18-CV-2874

Before Jolly, Stewart, and Oldham, *Circuit Judges*.

E. Grady Jolly, *Circuit Judge*:

After she was fired, Denise Watkins sued her former boss, St. John the Baptist Parish Sheriff Mike Tregre, for race discrimination under Title VII of the Civil Rights Act of 1964 and for retaliatory discharge under the Family Medical Leave Act (FMLA).  Sheriff Tregre maintains that he had a legitimate reason for firing Watkins—poor performance.  But Watkins says that reason is pretextual.  The district court agreed with Sheriff Tregre and entered summary judgment against Watkins.  We conclude that there is a genuine dispute of material fact as to whether Sheriff Tregre's proffered reason for firing Watkins is pretext for Title VII race discrimination and

No. 20-30176

FMLA retaliation.  We therefore VACATE the district court's judgment and REMAND for further proceedings not inconsistent with this opinion.

## I.

Denise Watkins is a black woman who is suffering from severe anxiety. She was a shift supervisor in the dispatch department of the St. John the Baptist Parish Sheriff's Office, where she had worked for 17 years—on and off.  She reported to Lieutenant Marshall Carmouche, who reported to Senior 911 Commander Conrad Baker, and to Sheriff Tregre.  The events that led to this lawsuit occurred in a tight time span, between late January and early March 2018.  Timing is important, so we will include specific dates.

On January 30, Lieutenant Carmouche commended Watkins and three other dispatchers for "superb work."  He recognized Watkins's performance in an email to Sheriff Tregre, explaining that "teamwork" in the 911 department had led to an arrest.

Just ten days later, however, Lieutenant Carmouche counseled Watkins about her poor performance.  He told Watkins during this February 9 discussion that she "need[ed] to do a better job in supervising her personnel and do a better job overall."  By way of examples, he addressed Watkins's sleeping on the job, missing license-plate-recognition hits, making personal phone calls while on duty, and failing to ensure that emergency units promptly were dispatched.  No disciplinary measures were taken.

On February 20, Watkins gave Lieutenant Carmouche and Senior 911 Commander Baker a doctor's note.  The note said that "[d]ue to diagnosis of anxiety, [Watkins] requires 3 24 hour shifts/periods 'off' and free of responsibility per week."  Senior 911 Commander Baker passed the note up his chain of command and alerted human resources.

No. 20-30176

On February 22, two days after receiving notice of Watkins's medical condition, Lieutenant Carmouche filed a disciplinary-review-board request, seeking review of the charges against Watkins.[1] He charged that Watkins had engaged in "[c]onduct and work performance unsuitable for an employee of St. John the Baptist Sheriff's Office." He identified five infractions, alleging that Watkins (1) instructed dispatchers under her supervision that a license-plate-recognition hit was not valid when it was valid; (2) failed to ensure that emergency medical services were dispatched to an accident with injury within a reasonable amount of time; (3) failed to remove a recovered gun from the National Crime Information Center database after being advised that the gun was recovered; (4) made "excessive" personal phone calls while on duty; and (5) continued sleeping while on duty after being counseled against doing so. Most of these infractions had occurred days or even weeks before the medical leave request. Indeed, some ten days before the request, Lieutenant Carmouche had counseled Watkins about most of these infractions, and he neither took, nor indicated, further disciplinary action.

Yet, on February 22, Lieutenant Carmouche asked Watkins to respond in writing to the deficiencies they discussed during their February 9 "counseling session." Watkins complied. In her response, she admitted sleeping on the job but explained that she had "developed some medical issues" that affected her sleep patterns.

The next day, on February 23, Watkins sent Lieutenant Carmouche and Senior 911 Commander Baker an email; the subject line read "Medical

---

[1] The disciplinary review board was created by Sheriff Tregre and consists of a "well-rounded group of people" the Sheriff selects from different divisions of the St. John the Baptist Parish Sheriff's Office. The board reviews allegations of misconduct and recommends to the Sheriff the disciplinary action, if any, that should be taken against the employee.

No. 20-30176

leave." Watkins wrote that she "needed to know when [her] medical leave is suppose [sic] to start since no one has gotten back with [her] yet."

On March 1, the disciplinary review board convened. Although Lieutenant Carmouche's request to the review board identified five infractions, the board itself reviewed only one—sleeping on the job. The board unanimously recommended that Watkins be fired, and Sheriff Tregre approved the recommendation, firing Watkins the next day, on March 2.

Watkins, however, was not the only dispatch supervisor who had been caught sleeping on the job. Joe Oubre, a white male dispatch supervisor, also was caught, but he was not fired; he had only received "counseling."

Citing disparate treatment and stressing the suspicious timing of her firing, Watkins sued Sheriff Tregre under both Title VII and the FMLA.[2] She alleged that Sheriff Tregre violated Title VII by treating her worse than Joe Oubre and, further, violated the FMLA by firing her in retaliation for requesting medical leave.

After discovery, Sheriff Tregre moved for summary judgment. He contended that Watkins's Title VII claim failed because Watkins could not make a prima facie case of discrimination, and even if she could, he had legitimate, nondiscriminatory reasons for firing her. He further contended that Watkins's FMLA claim failed because Watkins never requested FMLA leave, and even if she had, he had legitimate, nonretaliatory reasons for firing her, i.e., sleeping on the job.

---

[2] Watkins also asserted a claim for "failure to accommodate," presumably under the Americans with Disabilities Act. The district court dismissed the claim on summary judgment, and Watkins does not mention the claim in her briefing on appeal. So Watkins has abandoned the claim. *See Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 614 n.1 (5th Cir. 2020) (citing *United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000)).

No. 20-30176

Watkins, naturally, opposed the Sheriff's motion for summary judgment. To show disparate treatment and pretext in the Title VII context, she pointed to deposition testimony showing that Joe Oubre was not fired for sleeping on the job. As for her FMLA claim, Watkins contended that the doctor's note she gave Lieutenant Carmouche and Commander Baker constituted FMLA-protected activity. On pretext, she stressed the inculpating sequence of events: Two days after receiving the doctor's note, Lieutenant Carmouche filed a disciplinary-review-board request against her. That request culminated in her firing seven days later, which was as immediately after her protected activity as established procedures would allow. In short, with respect to the FMLA charge, she based her claim of pretext on the tight timing of her discharge.

The district court granted summary judgment to Sheriff Tregre. In its analysis of both claims, the district court assumed that Watkins made a prima facie case, noted the reasons Sheriff Tregre gave for firing her, and turned to pretext. The court then concluded, without further explanation, that Watkins "failed to produce competent summary judgment evidence to show disparate treatment or that [Sheriff Tregre's] proffered explanation is false or unworthy of credence." The court then entered a take-nothing judgment, from which Watkins timely appeals.

## II.

We review the grant of summary judgment de novo. *West v. City of Houston*, 960 F.3d 736, 740 (5th Cir. 2020) (per curiam). Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect

5

the outcome of the suit." *Id*. We view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in that party's favor. *Adams v. Alcolac, Inc.*, 974 F.3d 540, 543 (5th Cir. 2020) (per curiam).

## III.

Watkins contends the district court erred in granting summary judgment dismissing her Title VII and FMLA claims. We consider her Title VII claim before turning to her FMLA claim.

## A.

### Title VII Claim

Watkins first challenges the district court's summary judgment dismissing her Title VII claim. Without addressing the evidence of disparate treatment, the district court entered summary judgment, concluding that Watkins failed to show that Sheriff Tregre's proffered reason for firing her was pretextual.

It is basic that Title VII prohibits an employer like Sheriff Tregre from discriminating against an employee like Watkins "because of" her race. *See* 42 U.S.C. § 2000e-2(a)(1). Watkins lacks direct evidence of discrimination, so we apply the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Sanders v. Christwood*, 970 F.3d 558, 561 (5th Cir. 2020). Under that framework, Watkins must first make a prima facie case of race discrimination, and then the burden of production shifts to Sheriff Tregre to proffer a legitimate, nondiscriminatory reason for his action. *See Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016). If Sheriff Tregre does that, "the presumption of discrimination disappears," and Watkins "must then produce substantial evidence indicating that the proffered legitimate[,] nondiscriminatory reason is a pretext for

No. 20-30176

discrimination." *Id.* (citation and quotations omitted). We turn now to apply this framework to the facts of the case.

**1.**

At the first step of the *McDonnell Douglas* framework, Watkins must make a prima facie case of race discrimination. To do that, she must show that (1) she belongs to a protected group, (2) she was qualified for her dispatch supervisor position, (3) she suffered an adverse employment action, and (4) a similarly situated employee outside of her protected group was treated more favorably. *See Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007).

Watkins makes a prima facie case of race discrimination. First, Watkins is black and therefore a member of a protected group. *See Outley*, 840 F.3d at 216. Second, Sheriff Tregre does not dispute that Watkins was qualified for her dispatch supervisor position. Third, Watkins's firing obviously constitutes an adverse employment action. *See Long v. Eastfield Coll.*, 88 F.3d 300, 306 (5th Cir. 1996). Fourth, Watkins marshals competent summary-judgment evidence, i.e, Sheriff Tregre's deposition testimony, showing that Joe Oubre, a similarly situated white male employee, was treated more favorably.[3] Oubre was "counseled"—not fired—for sleeping on the job.

Because Watkins makes a prima facie case of race discrimination, the burden shifts to Sheriff Tregre to proffer a legitimate, nondiscriminatory reason for firing Watkins. *See Outley*, 840 F.3d at 218.

---

[3] We note that Sheriff Tregre has not made any argument denying that Watkins and Oubre are similarly situated. In fact, Sheriff Tregre's brief ignores Oubre entirely.

**2.**

At this step of the *McDonnell Douglas* framework, Sheriff Tregre's burden is one of production—not persuasion. *See Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). He "'must articulate a nondiscriminatory reason with sufficient clarity to afford [Watkins] a realistic opportunity to show that the reason is pretextual.'" *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 231 (5th Cir. 2015) (quoting *Patrick v. Ridge*, 394 F.3d 311, 317 (5th Cir. 2004) (emphasis omitted)).

He does so. The proffered reason is "incompetent and inefficient job performance." We have "held that a charge of 'poor work performance' is adequate when coupled with specific examples." *Id.* Sheriff Tregre offers five examples: Watkins (1) instructed dispatchers under her supervision that a license-plate-recognition hit was not valid when the hit was valid; (2) failed to ensure that emergency medical services were dispatched to an accident with injury within a reasonable amount of time; (3) failed to remove a recovered gun from the National Crime Information Center database after being advised that the gun was recovered; (4) made "excessive" personal phone calls while on duty; and (5) continued sleeping while on duty after being counseled against doing so.

Because Sheriff Tregre meets his burden of production at the second step of the *McDonnell Douglas* framework, the burden shifts back to Watkins to show pretext. *See Outley*, 840 F.3d at 216.

**3.**

Watkins must now produce "substantial evidence" that Sheriff Tregre's proffered reason is pretext for race discrimination. *See Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Id.* at 579

(quotations omitted). Watkins "may establish pretext either through evidence of disparate treatment or by showing that [Sheriff Tregre's] proffered explanation is false or 'unworthy of credence.'" *Id.* at 578.

Viewing the evidence in the light most favorable to Watkins, we conclude that Watkins has produced substantial evidence of pretext based on disparate treatment. As noted, Sheriff Tregre's deposition testimony shows that Sheriff Tregre treated Watkins worse than Joe Oubre, a similarly situated white male who also was caught sleeping on the job. Whereas Sheriff Tregre fired Watkins, he merely "counseled" Oubre. True, Sheriff Tregre offered, and Lieutenant Carmouche's disciplinary-review-board request listed, additional examples of poor performance. But there is a factual dispute as to whether those examples were the basis for the firing decision. On the one hand, Sheriff Tregre testified that he fired Watkins for "a variety of deficiencies." On the other, a member of the disciplinary review board said that sleeping on the job was the only example of poor performance presented to the board. In this posture, we cannot weigh that evidence or resolve that dispute in Sheriff Tregre's favor, *see Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam), so we assume that Watkins was fired for sleeping on the job. Because Joe Oubre was "counseled" for the same offense, we conclude that there is a genuine dispute of material fact on the question whether Sheriff Tregre's proffered reason for firing Watkins is pretext for race discrimination. The district court therefore erred in dismissing Watkins's Title VII claim on summary judgment and is accordingly reversed on that claim.

No. 20-30176

Having resolved Watkins's first challenge to the dismissal of her complaint, we turn to her second.[4]

## B.

### FMLA Claim

Watkins next challenges the summary judgment dismissing her FMLA retaliatory-discharge claim. The district court dismissed this claim for the same reason it dismissed the Title VII claim: Watkins failed to show that Sheriff Tregre's proffered reason for firing her was pretextual.

The FMLA grants "an eligible employee" up to twelve weeks of annual unpaid leave for "a serious health condition" that prevents her from performing the functions of her job. 29 U.S.C. § 2612(a)(1)(D). It prohibits an employer from interfering with the exercise of any right provided under the Act and from "discharg[ing] . . . any individual for opposing any practice made unlawful by" the Act. *Id.* § 2615(a)(2).

Watkins lacks direct evidence of discrimination, so we again apply the *McDonnell Douglas* framework. *See Tatum v. S. Co. Servs.*, 930 F.3d 709, 713 (5th Cir. 2019). That framework first requires Watkins to make a prima facie case. *See id.* If she does that, the burden shifts to Sheriff Tregre to articulate a legitimate, nonretaliatory reason for firing her. *See id.* If he does that, the burden shifts back to Watkins to show that Sheriff Tregre's proffered reason is pretext for retaliation. *See id.*

---

[4] We note that although disparate treatment is clear, and adequately supports a conclusion that "sleeping on the job" is a pretextual reason for her discharge in the Title VII context, the timing of her discharge is also incriminating evidence of pretext in the FMLA context.

No. 20-30176

**1.**

At the first step of the *McDonnell Douglas* framework, we ask whether Watkins makes a prima facie case of retaliatory discharge. To make a prima facie case, Watkins must establish three elements: (1) she engaged in FMLA-protected activity, (2) Sheriff Tregre discharged her, and (3) a causal link between the protected activity and the discharge. *See id.*

Watkins establishes all three elements of her prima facie case. Watkins engaged in FMLA-protected activity when she gave Lieutenant Carmouche and Senior 911 Commander Baker the doctor's note stating that, "[d]ue to diagnosis of anxiety," she required three days off per week, and when she sent Lieutenant Carmouche and Senior 911 Commander Baker an email asking when her requested medical leave was supposed to start. So her request for medical leave establishes first element. She establishes the second element because Sheriff Tregre discharged her. And she establishes the third element of her prima facie case based on timing alone: She requested medical leave on February 20 and 23, and a disciplinary-review-board request was brought against her on February 22. The next succeeding board was convened on March 1, and she was fired the next day. In short, Watkins was fired as immediately after her protected activity as established procedures would allow. *See Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 578 (5th Cir. 2020) (retaliation plaintiff met prima facie burden based on timing alone by pointing to six-to-seven-week gap between protected activity and termination); *see also Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019) ("At the prima facie case, a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action.").

Because Watkins makes a prima facie case of FMLA retaliation, the burden shifts to Sheriff Tregre to proffer a legitimate, nonretaliatory reason for firing Watkins. *See Tatum*, 930 F.3d at 713.

**2.**

In accord with the recommendation of the review board, Sheriff Tregre fired Watkins for "sleeping on the job." That reason satisfies Sheriff Tregre's burden of production at the second step of the *McDonnell Douglas* framework. The burden thus shifts back to Watkins to raise a genuine dispute of material fact regarding pretext. *See Tatum*, 930 F.3d at 714.

**3.**

Watkins must now raise a genuine dispute as to whether the proffered reason—"sleeping on the job"— is pretext for FMLA retaliation. *See id.* She may do so using "*any evidence* that casts doubt on the credence" of that reason. *Brown*, 969 F.3d at 578 (emphasis added). A reason is "unworthy of credence if it is not the real reason for the adverse employment action." *Laxton*, 333 F.3d at 578. Turning to the summary-judgment record, we see two items of evidence that "cast[ ] doubt on the credence," *Brown*, 969 F.3d at 578, of the proffered reason and suggest that "sleeping on the job" was not "the real reason," *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011), for firing Watkins.

First, the record reflects that "sleeping on the job" is not an infraction that results in termination. Sheriff Tregre tolerated "sleeping on the job" by at least one other dispatch supervisor: He did not fire Joe Oubre after Oubre was caught "sleeping on the job." What is more, Sheriff Tregre could not recall *any* dispatcher (besides Watkins) whom he had *ever* fired for "sleeping on the job." That Sheriff Tregre did not fire—and apparently has not ever fired—a dispatch supervisor for "sleeping on the job," yet proffered that very reason as justification for firing Watkins, "casts doubt on the credence,"

No. 20-30176

*Brown*, 969 F.3d at 578, of the reason. When combined with Watkins's prima facie case, and when viewed in Watkins's favor, this evidence raises a genuine dispute as to whether "sleeping on the job" is the "real reason" Sheriff Tregre fired Watkins. *See Vaughn*, 665 F.3d at 639–40. A reasonable jury could infer unlawful retaliation from the falsity of Sheriff Tregre's explanation. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000); *Vaughn*, 665 F.3d at 639–40; *Gee v. Principi*, 289 F.3d 342, 348 (5th Cir. 2002).[5]

Second, if the above evidence were not enough, Watkins also directs our attention to the suspicious sequence of events leading up to her firing. Lieutenant Carmouche filed a disciplinary-review-board request against her just two days after she gave him a doctor's note requesting three days off per week. Watkins had been caught sleeping on the job before, but it was not until she submitted the doctor's note that a disciplinary-review-board request was initiated. As we have noted, the disciplinary-review-board request set in motion the usual process that culminated in Watkins's ultimate firing. Within two days after Watkins gave Lieutenant Carmouche the doctor's note, Lieutenant Carmouche initiated the disciplinary-review-board request that resulted in her firing; this "carr[ies] significant weight" in our pretext inquiry. *Ameristar Airways, Inc. v. Admin. Review Bd., U.S. Dep't of*

---

[5] To be clear, we do *not* hold, as we have in Watkins's Title VII claim, that Watkins has established disparate treatment for purposes of the FMLA. She has not: Her evidence of disparate treatment in the Title VII context does not establish disparate treatment in the FMLA context because the record is unclear on whether her comparator in the Title VII context, Joe Oubre, requested medical leave. *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 222 (5th Cir. 2001) (pregnancy-discrimination plaintiff failed to show pretext based on disparate treatment because she failed to show that any non-pregnant co-worker received more favorable treatment); *Burton v. Buckner Child. & Fam. Servs., Inc.*, 104 F. App'x 394, 396 (5th Cir. 2004) (per curiam) (employee failed to show disparate treatment under the FMLA because the record did not reflect whether proposed comparator had requested leave).

*Labor*, 650 F.3d 562, 569 n.21 (5th Cir. 2011).[6]  When combined with the discredited reason of "sleeping on the job," the near-immediate temporal proximity of the discharge to the protected activity  leaves us with no room to doubt that Watkins has carried her summary-judgment burden of producing "substantial evidence" that Sheriff Tregre would not have fired her but for her FMLA-protected activity.  *See Brown*, 969 F.3d at 577 (citing *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019)).

In sum, viewing all of the evidence in its totality and in the light most favorable to Watkins, we conclude that there is a genuine dispute of material fact on the question whether Sheriff Tregre's proffered justification for firing Watkins is pretext for FMLA retaliation.  The district court therefore erred in granting summary judgment.  This conclusion does not mean that Watkins will prevail at trial; it means only that Watkins has produced enough evidence to survive summary judgment on her FMLA retaliatory-discharge claim and is entitled to proceed further.[7]

---

[6] Although we have "affirmatively reject[ed] the notion that temporal proximity standing alone can be sufficient proof of but for causation," *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007), we rarely have addressed temporal proximity so close.  *See, e.g.*, *Brown*, 969 F.3d at 579 (temporal proximity of about six weeks); *United States ex rel King v. Solvay Pharms., Inc.*, 871 F.3d 318, 334 (5th Cir. 2017) (per curiam) (about three-and-a-half months); *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 967–68 (5th Cir. 2016) (about two months); *Outley*, 840 F.3d at 219–220 (about two months); *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 487 (5th Cir. 2008) (more than two weeks); *Boyd v. State Farm Ins. Cos.*, 158 F.3d 326, 330 (5th Cir. 1998) (about one year); *but see Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 306–07 (5th Cir. 2020) (about one week).

[7] With respect, we cannot agree with the partial dissent's contention that the evidence showing that Oubre was not fired for "sleeping on the job" is "irrelevant as a matter of law." *Post*, at 17.  The partial dissent seems to reason that this evidence is irrelevant because it does not amount to dispositive disparate treatment under the FMLA. *Post*, at 17 (citing *Wallace*, 271 F.3d at 221).  But evidence need not be dispositive of pretext to be probative in determining pretext.  *See Brown*, 969 F.3d at 578 ("Pretext can be proven by any evidence that casts doubt on the credence of the employer's proffered justification

No. 20-30176

## IV.

In this opinion, we have held that the district court erred in granting summary judgment dismissing Watkins's Title VII and FMLA claims because Watkins created a genuine dispute of material fact at the pretext stage of the *McDonnell Douglas* framework as to each claim, and she is entitled to proceed further to prove her case. Accordingly, the judgment of the district court is VACATED as to each claim and the case is REMANDED for further proceedings not inconsistent with this opinion.

VACATED AND REMANDED.

---

for the adverse employment action."). And we think that the evidence we have described tends to show that "sleeping on the job" is not a dischargeable offense, and, consequently, that Sheriff Tregre's assertion that he discharged Watkins for "sleeping on the job" is unworthy of credence as a reason for discharging Watkins. To us, this conclusion is inescapable when applying rational thinking. Because our holding that Watkins has created a genuine dispute of material fact as to pretext is based on (1) evidence that the proffered reason of "sleeping on the job" is unworthy of credence and (2) extremely close temporal proximity, we respectfully disagree with the partial dissent's assertion that we have "violat[ed] our rule of orderliness" by relying on temporal proximity alone. *Post*, at 18. We have done no such thing.

No. 20-30176

Andrew S. Oldham, *Circuit Judge*, dissenting in part:

I join the panel in reversing the district court's grant of summary judgment as to Watkins's Title VII claim. I write separately because Watkins did not carry her burden as to the Family Medical Leave Act ("FMLA" or "the Act") retaliation claim. The majority's holding to the contrary relies on nonexistent facts and an erroneous understanding of precedent. I respectfully dissent in part.

\*    \*    \*

No one disputes the rules that govern these summary judgment proceedings. We apply the *McDonnell Douglas* burden-shifting framework to determine whether the Defendants discharged Watkins in violation of FMLA's anti-retaliation provisions. *See Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005). Under that framework, Watkins bears the initial burden of establishing a *prima facie* case of retaliation. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Once Watkins makes out a *prima facie* case, Sheriff Tregre must "articulate some legitimate, nondiscriminatory reason" for firing her. *Ibid.* Then it falls to Watkins to show the proffered reason is a pretext for retaliation. *Id.* at 804.

Here, the question is whether Tregre's proffered reason—that Watkins slept on the job—was pretext for FMLA retaliation. The majority says Watkins carried her burden, relying primarily on three pieces of evidence: (1) that the Sheriff's Office only verbally counseled Joe Oubre for sleeping on the job, but fired Watkins for the same conduct (the "disparate treatment" evidence); (2) that no dispatcher has previously been fired for sleeping on the job (the "unprecedented action" evidence); and (3) that a disciplinary review board was convened just two days after Watkins requested medical leave (the "temporal proximity" evidence). *See ante*, at 12–14. Taken together, "Watkins has produced enough evidence to survive

summary judgment on her FMLA retaliatory-discharge claim." *Id.* at 15. There are three fundamental errors in the majority's conclusion.

First, the "disparate treatment" evidence is irrelevant as a matter of law. Our precedent is clear—disparate treatment is only probative of pretext where the comparator employee is not in the plaintiff's protected class. *See Wallace v. Methodist Hosp. Syst.*, 271 F.3d 212, 221 (5th Cir. 2001) (explaining that a plaintiff must show "that the misconduct for which she was discharged was nearly identical to that engaged in by an employee *not within her protected class* whom the company retained" (emphasis added) (quotation and alteration omitted)). That means Watkins bore the burden of showing Oubre engaged in the same misconduct *and* that he never requested FMLA-protected leave. Here, Watkins offered no evidence showing whether Oubre requested leave. The record is not "unclear" on that point. *Ante*, at 13 n.5. It's just deafeningly silent—and given that it's Watkins's burden to prove the point, that silence is fatal to her FMLA claim.

Undeterred, the majority tries to smuggle in the disparate-treatment evidence another way. It says the non-evidence of Oubre's non-firing can show that "'sleeping on the job' is not an infraction that results in termination." *Id.* at 13. But there is no legal difference between saying "Oubre was not fired for sleeping on the job" and "no other employee was fired for sleeping on the job." Both are disparate-treatment claims. Both are foreclosed by Watkins's failure to carry her evidentiary burden.

Second, once we exclude the "disparate-treatment" evidence, the majority's "unprecedented-action" evidence is meaningless. True, Sheriff Tregre admitted he couldn't recall firing another dispatcher for sleeping on the job. But that fact standing alone tells us nothing. Excluding Oubre, we know that Tregre caught one dispatcher sleeping (Watkins) and fired one dispatcher (Watkins). I suppose that makes her firing "unprecedented"—

but it also makes Tregre's practice of firing sleeping dispatchers unbroken. Either way, it provides zero evidence of pretext.

Third, the "temporal proximity" evidence cannot alone establish pretext. It's true that close temporal proximity between an employee's protected conduct and her firing "carr[ies] significant weight" in the pretext inquiry. *Ameristar Airways, Inc. v. Admin. Rev. Bd., U.S. Dep't of Lab.*, 650 F.3d 562, 569 n.21 (5th Cir. 2011). But we have repeatedly said temporal proximity evidence alone is insufficient to defeat summary judgment. *See, e.g.*, *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007). Again, the panel concedes as much. But the majority nonetheless contends that this case is different for two reasons: (1) the evidence "[w]hen combined . . . leaves us with no room to doubt that Watkins has carried her summary-judgment burden"; and (2) "we have rarely addressed temporal proximity so close." *Ante*, at 14 & n.6.

Those distinctions are unpersuasive. As noted above, the "unprecedented action"/"disparate treatment" evidence is legally irrelevant. So there is no "combined" evidentiary picture to consider in tandem with "temporal proximity." The *only* evidence of pretext the majority can find is temporal proximity—and it violates our rule of orderliness to rely on that alone. *See Strong*, 482 F.3d at 808 (holding that "temporal proximity alone is insufficient"); *ibid.* (explaining that its holding would "prevent future litigants from relying on temporal proximity alone"); *cf. Evans v. City of Houston*, 246 F.3d 344, 356 (5th Cir. 2001) ("[T]he close temporal proximity between [the plaintiff's] appearance at her co-worker's grievance hearing and her demotion, coupled with . . . evidence in the form of memoranda written by [the employer] that tend to refute [his] own justifications for the demotion . . . supports an inference of retaliation.").

Moreover, the majority has discarded our precedents' bright line ("temporal proximity alone is never sufficient") and replaced it with a new, very hazy one ("temporal proximity *is* sufficient when we think it's 'close'"). So, you might reasonably wonder, when is temporal proximity "close"? Is three days sufficiently close? How about six? Who knows?

In sum, we have no basis for reversing the district court's grant of summary judgment on Watkins's FMLA claim. I respectfully dissent from that portion of today's decision.