# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 26, 2022

Lyle W. Cayce
Clerk

No. 21-40119
Summary Calendar

Lance Royall,

*Plaintiff—Appellant*,

*versus*

Enterprise Products Company,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:19-CV-92

Before Owen, *Chief Judge*, and Smith and Elrod, *Circuit Judges*.
Per Curiam:[*]

After his employment was terminated, Lance Royall sued his former employer, Enterprise Products Company (Enterprise), for retaliation under the Family and Medical Leave Act of 1993 (FMLA). Royall claims that Enterprise terminated his employment for invoking his FMLA right to take

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-40119

medical leave for gastric bypass surgery. Enterprise maintains that it terminated Royall for poor job performance. The district court granted summary judgment in favor of Enterprise because Royall failed to demonstrate that Enterprise's stated reason was pretext for retaliation. We affirm the district court's judgment.

**I**

In October 2017, Royall began working for Enterprise, an energy services company, at its Baytown, Texas terminal as a truck maintenance supervisor. His job responsibilities included planning the schedules for maintenance work on trucks and overseeing mechanics' performance of that work. Royall reported to Baytown terminal manager Gary O'Neil. On September 4, 2018, O'Neil met with Enterprise's senior director of trucking to discuss how to improve morale in Baytown. During that meeting, O'Neil described Royall's failure to plan work schedules, his poor attitude, and O'Neil's repeated efforts to correct Royall's deficiencies.

Later that month, Royall injured his shoulder after tripping and falling at work. Because the injury occurred before Royall had worked at Enterprise for twelve months, Royall was ineligible for FMLA leave.[1] He returned to work with a doctor's clearance shortly thereafter.

A few weeks later, on October 10, Enterprise issued Royall a Performance Improvement Plan (PIP). A human resources employee wrote the PIP based on information that she had collected from O'Neil and Enterprise's director of trucking operations Chad Woods. The PIP described several problems with Royall's work. He "failed to develop job plans," leaving staff unclear on what they needed to do. He was "behind on

---

[1] 29 U.S.C. § 2611(2)(A) (requiring that an employee work for at least 12 months to be eligible for FMLA leave).

2

multiple areas" of preventative maintenance and inspection. On several occasions, the PIP stated, Royall had marked equipment as out of service but "failed to follow through on getting the equipment sent out, tracked, and fixed in a timely manner." Despite his supervisory responsibilities, the PIP claimed, Royall failed to hold staff to safety standards. The PIP also critiqued Royall's attitude, citing his public refusal to perform mechanical work that he claimed he was not paid to do. If Royall did not "achieve sustained and immediate improvement," the PIP warned, he might face "further disciplinary action up to and including dismissal."

Royall claimed that the PIP surprised him. He contends that until the PIP, O'Neil had not complained to Royall about his performance. Contrary to the PIP, he attests that he did plan the mechanics' workdays. He attributes delays in maintenance work to the backlog that he inherited from his predecessor and to a labor shortage at Enterprise.

On October 30, Royall requested FMLA leave, which Enterprise approved. The reason for that leave is contested. Royall claims that the leave was for gastric bypass surgery, whereas Enterprise alleges that the leave was for neck and spine problems and not for surgery. Six days after Royall's FMLA request, on November 5, O'Neil and Woods met with Royall to discuss his lack of progress under the PIP. Woods described Royall's continued failure to plan and supervise the mechanics' work and to keep track of inspections. During the meeting, Royall noted that he would be taking time off work for his surgery.

Soon after the November 5 meeting, Woods recommended that Enterprise fire Royall. By November 9, Enterprise had approved Royall's termination, though Enterprise decided to postpone the termination until Royall returned to work after the surgery.

No. 21-40119

On November 19, Royall underwent gastric bypass surgery. He returned to work on November 26, and was fired shortly thereafter, on December 3, 2018.

On March 6, 2019, Royall filed this lawsuit for FMLA retaliation in the U.S. District Court for the Southern District of Texas. In April 2020, Enterprise moved for summary judgment. In January 2021, the district court granted Enterprise's motion per the recommendation of a magistrate judge. The district court adopted the magistrate judge's memorandum in full as the opinion of the court.

## II

We review a district court's grant of summary judgment *de novo*.[2] Summary judgment is appropriate only if "there is no genuine dispute as to any material fact."[3] A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the non-movant," construing the facts "'in the light most favorable'" to that party.[4]

The FMLA grants eligible employees the right to up to twelve weeks of annual leave for a serious health condition that prevents them from performing their job.[5] The statute prohibits employers from retaliating against employees for exercising this right.[6] In the absence of direct evidence

---

[2] *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 520 (5th Cir. 2021).

[3] FED. R. CIV. P. 56(a).

[4] *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 549-50 (5th Cir. 2012) (first quoting *Anderson v. Liberty Lobby Inc.*, 447 U.S. 242, 248 (1986); and then quoting *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007)).

[5] 29 U.S.C. § 2612(a)(1)(D).

[6] *Id.* § 2615(a)(1); *see also* 29 C.F.R. § 825.220(c) ("The Act's prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights.").

of retaliatory intent, we apply the *McDonnell Douglas* burden-shifting framework to determine whether an employer discharged an employee in retaliation for FMLA-protected activity.[7]  To establish a *prima facie* case for retaliatory discharge, employees must show that they: (1) "engaged in a protected activity"; (2) "the employer discharged [them]"; and (3) "there is a causal link between the protected activity and the discharge."[8]  If an employee makes this *prima facie* showing, the burden shifts to the employer "to articulate a legitimate, nondiscriminatory reason" for the discharge.[9]  "'This burden is one of production, not persuasion,' and it involves no credibility assessment."[10]  If the employer articulates such a reason, the burden shifts back to the employee "to show by a preponderance of the evidence that the employer's articulated reason is a pretext" for retaliation.[11]  An explanation is pretextual when it is "'unworthy of credence'—i.e., when it 'is not the real reason for the adverse employment action.'"[12]

Applying this framework, the district court ruled in Enterprise's favor.  The court assumed without deciding that Royall had established a *prima facie* case for retaliation.  The burden then shifted to Enterprise, which maintained that it terminated Royall for his unsatisfactory job performance.  The district court held that this explanation "easily satisfies" Enterprise's

---

[7] *Tatum v. S. Co. Servs., Inc.*, 930 F.3d 709, 713 (5th Cir. 2019); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).

[8] *Richardson v. Monitronics Int'l, Inc.* 434 F.3d 327, 332 (5th Cir. 2005).

[9] *Id.*

[10] *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)).

[11] *Richardson*, 434 F.3d at 332-33.

[12] *Lindsey v. Bio-Medical Applications of La., L.L.C.*, 9 F.4th 317, 325 (5th Cir. 2021) (quoting *Watkins v. Tregre*, 997 F.3d 275, 284 (5th Cir. 2021)).

No. 21-40119

burden. At the next step of the analysis, the court determined that Royall failed to meet his burden to show Enterprise's reason was pretextual. The court explained that "Royall has not presented any evidence suggesting that Enterprise did not honestly believe that his performance was deficient and deserving of termination."

On appeal, Royall disputes the district court's rejection of pretext. Royall argues that the district court overlooked or improperly weighed evidence demonstrating that Enterprise's rationale is not credible.

Royall asserts that the district court disregarded inconsistencies in Enterprise's evidence. It is true that "[a] court may infer pretext where a defendant has provided inconsistent or conflicting explanations" for an employee's termination.[13] An incoherent rationale may suggest that the employer's articulated explanation is not its real reason, such that "the trier of fact can reasonably infer . . . that the employer is dissembling to cover up" a retaliatory motive.[14] The record, however, does not reveal any inconsistencies in Enterprise's explanation for Royall's termination. Royall references evidence that more than one Enterprise employee claimed credit for proposing to issue a PIP to Royall and for deciding to postpone his termination until he returned to work after his surgery. Any inconsistency on these points is irrelevant. Conflict over who at Enterprise made these decisions does not cast doubt on why Enterprise terminated Royall.[15] As the district court recognized, Enterprise's explanation for Royall's termination

---

[13] *Nasti v. CIBA Specialty Chemicals Corp.*, 492 F.3d 589, 594 (5th Cir. 2007).

[14] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000).

[15] *See Nasti*, 492 F.3d at 594 (rejecting pretext despite alleged inconsistencies because the employer's reasons for termination were consistent).

has remained the same throughout. Enterprise has consistently attributed Royall's discharge to his sustained unsatisfactory job performance.

Royall argues that the district court discounted evidence that his work was adequate and so Enterprise's stated justification for his termination was illegitimate. The record does not support this contention. It is undisputed that Royall inherited a backlog from his predecessor, which Enterprise acknowledged would take years to work through. Royall cites maintenance records and declarations attesting that he reduced this backlog. But he does not present evidence demonstrating that his remedial efforts were sufficient to meet Enterprise's expectations. As Enterprise points out, the maintenance records also show that many pieces of equipment remained out of service and many others went out of service during Royall's tenure. When assessing pretext, it is not for this court "to engage in second-guessing of an employer's business decisions."[16] It is up to Enterprise to decide whether Royall's efforts were satisfactory. We inquire only whether Enterprise's explanation for its decision is "'unworthy of credence.'"[17] The evidence that Royall has proffered does not raise any doubt that Enterprise did in fact disapprove of his job performance.

Royall argues that employees' FMLA rights would be eviscerated if courts merely accepted all employer claims of poor job performance at face value. He contends that employers could evade liability by "simply stat[ing] 'I believe the employee was a bad performer' without any specifics" or by referencing arbitrary standards. This objection misconstrues the employer's burden in the retaliation analysis. When explaining why its employment

---

[16] *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 564 (5th Cir. 2019) (quoting *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007)).

[17] *Lindsey v. Bio-Medical Applications of La., L.L.C.*, 9 F.4th 317, 325 (5th Cir. 2021) (quoting *Watkins v. Tregre*, 997 F.3d 275, 284 (5th Cir. 2021)).

decision was legitimate, an employer "must articulate in some detail a more specific reason than its own vague and conclusional feeling about the employee."[18]  Here, Enterprise met its burden.  Enterprise identified particular job functions that Royall failed to perform both before and after he was issued the PIP.  Namely, Enterprise produced evidence that Royall failed to develop job plans for the mechanics, had backlogs of maintenance and inspection work, and did not enforce safety policies among those he supervised.  For the more nebulous complaint about Royall's poor attitude, Enterprise gave an example, describing an incident in which Royall publicly refused to perform mechanical work.  Royall has not disputed this account.  He himself admits that "Enterprise made specific factual allegations."  The safeguards of the *McDonnell Douglas* framework negate Royall's concerns that employers may resort to groundless claims of poor job performance.

Royall does note pieces of evidence that the district court did not consider, but this evidence falls short of showing pretext.  He references his declaration, which challenges evidence from Enterprise about a missing trailer, an excessively lengthy tractor repair, and O'Neil's directions to Royall about spot checking and preventive maintenance work.  These factual disputes raise questions about some of the particularities of Royall's deficiencies, but they do not address whether Enterprise was satisfied with Royall's overall performance.[19]  This court will not infer that disagreement between the parties on certain aspects of Royall's work evinces dissembling

---

[18] *Patrick v. Ridge*, 394 F.3d 311, 317 (5th Cir. 2004).

[19] *See Jackson v. Watkins*, 619 F.3d 463, 467 (5th Cir. 2010) (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)) ("We have long recognized that to satisfy step three of the *McDonnell Douglas* framework, a plaintiff 'must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates.'").

on the part of Enterprise. "Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext."[20]

Royall also contests the district court's described sequence of events. The district court asserted that O'Neil first raised concerns about Royall's job performance before O'Neil knew that Royall intended to take leave for his surgery. Royall challenges this assertion based on his declaration, which states that he "often spoke to O'Neil" about his health issues, including his need to take leave for gastric bypass surgery. The timing of these conversations is unclear but leaves open the possibility that O'Neil was aware of Royall's planned medical leave before he criticized Royall's job performance. Yet Royall does not explain how O'Neil's knowledge alters the pretext analysis. To be sure, an employer that has no knowledge of an employee's protected activity cannot retaliate against the employee for that activity.[21] Nevertheless, although it is a prerequisite, knowledge alone does not establish pretext.[22]

Because Royall has not demonstrated that O'Neil's actions were pretextual, his "cat's paw" theory of liability also fails. Under the cat's paw theory, "a plaintiff must establish that the person with a retaliatory motive somehow influenced the decisionmaker to take the retaliatory action."[23] Royall tries to apply this theory to argue that O'Neil's retaliatory motive

---

[20] *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007).

[21] *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999) ("If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct.").

[22] *E.g., McCoy v. Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007) (rejecting pretext for retaliation when the employee showed only that "decisionmakers knew of her complaints and took an adverse employment action shortly thereafter").

[23] *Zamora v. Houston*, 798 F.3d 326, 331 (5th Cir. 2015).

No. 21-40119

should be imputed to Enterprise. This attempt is unavailing. Since Royall has not presented any evidence demonstrating pretext on the part of O'Neil, it makes no difference that O'Neil influenced Enterprise's decision to terminate Royall. To impute an employee's pretext to an employer, there must be some pretext to impute. Royall has not made such a showing. In any case, Royall has waived the cat's paw argument by failing to raise it before the magistrate judge.[24]

\* \* \*

Because Royall has not presented evidence of pretext, we AFFIRM the district court's decision granting summary judgment in favor of Enterprise.

---

[24] *Freeman v. Bexar*, 142 F.3d 848, 851 (5th Cir. 1998) ("[A] party who objects to the magistrate judge's report waives legal arguments not made in the first instance before the magistrate judge.").