# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-40737

United States Court of Appeals
Fifth Circuit

**FILED**

July 10, 2018

Lyle W. Cayce
Clerk

ARTHUR MITCHELL,

Plaintiff - Appellee

v.

DANNY MILLS; DENNIS CHARTIER,

Defendants - Appellants

Appeal from the United States District Court
for the Eastern District of Texas

Before JOLLY, SOUTHWICK, and WILLETT, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Danny Mills and Dennis Chartier, the defendants-appellants, were each mayors of the City of Naples, Texas, at times when the plaintiff was employed by the City. Arthur Mitchell, the plaintiff-appellee, is an African-American man who claims that the defendants paid two specific white employees at a higher rate than he was paid, in violation of Mitchell's constitutional right to equal protection of the law. The defendants claimed qualified immunity, which the district court denied. The defendants appeal this denial. We reverse.

No. 17-40737

I.

A.

Mitchell is an African-American man employed as a "City Worker" by the City of Naples, Texas (the "City"). He works in the Public Works Department ("PWD"), which handles water, sewer, and street maintenance for the City. The PWD includes a Water Department and a Street Department. Mitchell is assigned to the Water Department. Mitchell's responsibilities include monitoring wells, checking lift stations, cleaning the sewer plant, reading water meters, and clearing debris from the roads. Along with the supervisor of the Water Department, Kenneth Stacks, Mitchell also repairs water and sewer leaks, which is a "huge part" of the job. Mitchell's prior experience, before working for the City, includes plumbing, electrical maintenance, commercial driving, and operating forklifts. Based on his prior experience, until recently, Mitchell handled plumbing and electrical issues for the public library, the community center, and the PWD's shop. Additionally, Mitchell is the only employee with a commercial driver's license and thus the only employee who can drive the City's dump truck.[1]

The defendant Mills is the former mayor of the City. The defendant Chartier is the current mayor. Mitchell filed this wage-discrimination lawsuit against Mills and Chartier (the "defendants"), under 42 U.S.C. § 1983, alleging that the defendants paid him less than two[2] comparable white coworkers (the "comparators") on account of Mitchell's race, in violation of the Equal Protection Clause of the Fourteenth Amendment.[3] Although Mitchell sued the defendants in their official and individual capacities, only Mitchell's equal-

---

[1] Naples, Texas, is not a very big city. Its population was 1,378 at the 2010 census.

[2] Although Mitchell initially offered a third comparator, Harry Vissering, the district court held that Vissering was not comparable. Mitchell does not contend otherwise on appeal.

[3] Mitchell also brought various claims against the City, which is not a party to this interlocutory appeal.

No. 17-40737

protection claim against them in their individual capacities is before us on appeal.

We turn now to describe the record facts concerning the comparators.

B.

Lloyd Davlin is Mitchell's first alleged comparator. Davlin is employed in the Street Department. He is the "Street Superintendent" or "Street Supervisor." Although he works in the Street Department, Davlin shares some overlapping duties with Mitchell. For example, he and Mitchell take turns cleaning the sewer plant. But Davlin's responsibilities also include supervising and planning street projects, calculating material needed for those projects, and arranging to obtain materials necessary for street projects. Importantly, Davlin is authorized to operate the City's motor grader and lay-down machine. Employees in the Street Department are required to possess skills and experience in operating street-related heavy equipment, including a motor grader (to cut the appropriate grade for the street) and a lay-down machine (to apply asphalt to the roadway). When he first came to work with the City, Davlin had over twenty years of experience at a private mining company, including experience operating heavy machinery such as a motor grader.

Dwayne Heard is Mitchell's second alleged comparator. Although Heard's job title is disputed, it is undisputed that Heard was Davlin's predecessor in the Street Department and had essentially the same job duties and skills as Davlin, set out above. As is the case with Davlin, Heard shared some overlapping duties with Mitchell. Heard, however, also had more than twenty years of prior experience in the operation and maintenance of a variety of heavy equipment, including a motor grader, and an extensive background in construction. Heard used that experience during his brief four-month employment with the City, which occurred some four-plus years before

3

No. 17-40737

Mitchell filed this lawsuit. Additionally, Heard was a certified welder, and he performed welding services for the City.

## C.

In the proceedings before the district court, Mills and Chartier moved for summary judgment on the basis of qualified immunity. The district court, however, denied qualified immunity to the defendants, holding, without explanation, that there was a genuine dispute of material fact as to whether Mitchell and his comparators were sufficiently comparable. *See Mitchell v. City of Naples*, No. 2:16-CV-01039, 2017 WL 2911583, at *1 (E.D. Tex. July 7, 2017) (slip copy).

The defendants filed this interlocutory appeal, challenging the denial of qualified immunity. Among other arguments, they contend that Mitchell has not established a prima facie case for his equal-protection claim because Davlin and Heard are not proper comparators as a matter of law.

## II.

"[T]his court reviews a district court's denial of a motion for summary judgment on the basis of qualified immunity in a § 1983 suit de novo." *Good v. Curtis*, 601 F.3d 393, 398 (5th Cir. 2010) (quoting *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009)). "Denial of summary judgment on the ground of qualified immunity is immediately appealable to the extent that the question on appeal is whether the undisputed facts amount to a violation of clearly established law." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004) (quoting *Kelly v. Foti*, 77 F.3d 819, 821 (5th Cir. 1996)). Our review is limited to evaluating only the legal significance of the undisputed facts. *See Kinney v. Weaver*, 367 F.3d 337, 348 (5th Cir. 2004) (en banc).

## III.

Qualified immunity shields government officials from civil liability "insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has established a two-pronged approach for resolving government officials' qualified immunity claims. "First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal citations omitted). Courts are free to decide which of the two prongs of the qualified-immunity analysis to address. *Id.* at 236; *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016).

We decide this appeal on the first prong. Mitchell bears the burden to overcome qualified immunity. *See Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) ("Once the [defendants] assert[] [qualified immunity], the burden *shifts* to the plaintiff to rebut it." (quoting *Cousin v. Small*, 325 F.3d 627, 632 (5th Cir. 2003)). At the summary-judgment stage, Mitchell may not rest on mere allegations or unsubstantiated assertions but must point to specific evidence in the record demonstrating a material fact issue concerning each element of his claim. *See id.*; *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016).

We turn to that discussion now and hold that Mitchell has failed to show a violation of his constitutional rights.

A.

As an initial matter, although Mitchell's wage-discrimination claim was brought under § 1983, his claim should be analyzed under the doctrinal framework applicable to wage-discrimination cases brought under Title VII. *Whiting v. Jackson State Univ.*, 616 F.2d 116, 121–22 (5th Cir. 1980); *see Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 166 (5th Cir. 2007)

("Section 1983 and title VII are 'parallel causes of action.'" (quoting *Cervantez v. Bexar Cty. Civil Serv. Comm'n*, 99 F.3d 730, 734 (5th Cir. 1996))); *Lee v. Conecuh Cty. Bd. of Educ.*, 634 F.2d 959, 961–62 (5th Cir. 1981).

In order to establish a violation of the Equal Protection Clause in the employment context, a plaintiff must prove a racially discriminatory purpose or motive. *Whiting*, 616 F.2d at 122 (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977)). In the absence of direct evidence of intentional discrimination, under the Title VII framework, we apply the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 184 (5th Cir. 2018); *Lee*, 634 F.2d at 962–63; *cf. Harrington v. Harris*, 118 F.3d 359, 367 (5th Cir. 1997) (noting that claims of discrimination brought against private employers under 42 U.S.C. § 1981 are governed by the Title VII analysis, including the *McDonnell Douglas* burden-shifting framework). In this appeal, we are concerned only with the first step of the *McDonnell Douglas* framework: whether Mitchell has established a prima facie case of discrimination in pay on the basis of his race.[4]

As part of his prima facie case of wage discrimination, Mitchell "must show that he was a member of a protected class and that he was paid less than a non-member for work requiring substantially the same responsibility." *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008). We have clarified that "[a]n individual plaintiff claiming disparate treatment in pay . . . must show that his circumstances are 'nearly identical' to those of a better-paid employee who is not a member of the protected class." *Id.* at 523 (quoting

---

[4] Under the *McDonnell Douglas* framework, once a plaintiff has established a prima facie case of discrimination, the burden shifts to the employer to show a legitimate non-discriminatory reason for the pay disparity. *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008). If the defendant provides such a reason, the burden shifts back to the plaintiff to show that the employer's stated reason is pretextual. *Id.*

*Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991)).  In making this determination, a variety of factors are considered, including job responsibilities, experience, and qualifications.  *Herster*, 887 F.3d at 185.  "By properly showing a significant difference in job responsibilities, [the defendants] can negate one of the crucial elements in [Mitchell's] prima facie case of discrimination."  *Id.* (quoting *Pittman v. Hattiesburg Mun. Separate Sch. Dist.*, 644 F.2d 1071, 1074 (5th Cir. Unit A 1981)).

Our case law, although unpublished and therefore not precedential, has been consistent as it pertains to facts analogous to those before us now.  For example, in *Fields v. Stephen F. Austin State University*, we held that two African-American women employed as shuttle-bus drivers were not "nearly identical" to their alleged comparators.  611 F. App'x 830, 832 (5th Cir. 2015) (per curiam).  Unlike the two plaintiffs, their proffered comparators' job duties required mechanical skills, law-enforcement skills, or supervisory responsibilities.  *Id.*  And in *Frazier v. Sabine River Authority*, we held that an African-American park attendant was not "nearly identical" to his alleged comparator.  509 F. App'x 370, 373 (5th Cir. 2013) (per curiam).  Although some of the specific qualifications of Frazier and his alleged comparator were disputed, we found summary judgment appropriate on the undisputed facts: the plaintiff had a background in carpentry, and his alleged comparator had training in plumbing.  *Id.*  We thus rejected the plaintiff's argument that he was equally qualified for the park-attendant position and affirmed the district court's grant of summary judgment on the ground that the plaintiff failed to demonstrate that he was "nearly identical" to his alleged comparator.  *Id.*  We find the reasoning in these two unpublished opinions persuasive and on-point.

## B.

Here, given the undisputed evidence to which we have earlier alluded, there can be no genuine dispute that Mitchell's job is not "nearly identical" to

that of his proffered comparators.[5]  To begin, Mitchell worked in the Water Department; his comparators worked in the Street Department.

With respect to Davlin, it is undisputed that Davlin had skills and prior experience operating a motor grader and lay-down machine.  These skills were required for Davlin's position within the Street Department.  It is undisputed that Mitchell possessed none of these skills and that such skills and responsibilities were not required for a position in the Water Department.  Although Mitchell participated in roadwork projects, his participation was limited to driving the dump truck; Davlin operated the heavy machinery.  Additionally, Davlin's job duties included supervisory responsibilities, drafting budgets, planning roadwork projects, and operating various heavy machinery.  Mitchell had none of these responsibilities.  Therefore, Davlin is not a proper comparator.  *See Fields*, 611 F. App'x at 832.

With respect to Heard, Davlin's predecessor in the Street Department, it is undisputed that his position, like Davlin's, required skills and experience operating heavy construction equipment, including a motor grader.  Heard possessed those skills and used them during the course of his employment.  Mitchell had no such skills or responsibilities.  *See id.*  It is further noteworthy that Heard had an extensive background in welding, construction, and the operation and maintenance of heavy machinery; Mitchell had a background in plumbing, driving, and as an electrician.  *See Frazier*, 509 F. App'x at 373 (holding that the plaintiff and his proffered comparator were not nearly identical because the plaintiff had a background in carpentry, while his comparator had training in plumbing).  It is pellucid that Heard is not a proper

---

[5] Apart from his supervisor, Kenneth Stacks, Mitchell has one or two other coworkers within the Water Department.  At least one of those coworkers, Lawrence Matthews, is white.  We draw attention to the fact that Mitchell has chosen as his comparators not Matthews but, instead, two supervisors from the Street Department.

No. 17-40737

comparator, i.e., not "nearly identical" to Mitchell in terms of job duties and skills.[6]

#### IV.

In sum, Mitchell has failed to carry his burden to overcome the defendants' claim of qualified immunity by showing a violation of his constitutional rights. Mitchell's job and responsibilities were not "nearly identical" to those of Davlin or Heard. Thus, the district court erred in denying qualified immunity to the defendants. Accordingly, we reverse and remand with instructions to enter judgment for Mills and Chartier, dismissing the claims against them on grounds of qualified immunity.[7]

REVERSED and REMANDED.

---

[6] We observe that Heard ended his employment with the City months outside the limitations period applicable to Mitchell's equal-protection claim. Although the passage of time is thus another reason to question whether Heard is a valid comparator, *see Taylor*, 554 F.3d at 523, it is unnecessary to address that issue in this case because Heard does not support Mitchell's case in any event.

[7] Given the posture of this appeal, we have addressed only the question of qualified immunity as to the individual defendants. There remain, however, claims against the City pending before the district court.