# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 24, 2023

No. 22-30585

Lyle W. Cayce
Clerk

Katherine Muslow; Meredith Cunningham,

*Plaintiffs—Appellants*,

*versus*

Louisiana State University and Agricultural and Mechanical College, Board of Supervisors; Thomas Skinner, *in his individual capacity*; Larry Hollier; John Harman; Carlton Jones, III, *also known as* Trey Jones,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:19-CV-11793

---

Before King, Smith, and Elrod, *Circuit Judges*.

Per Curiam:[*]

Katherine Muslow and Meredith Cunningham, the plaintiffs-appellants, brought numerous gender discrimination and retaliation claims against their former employer and some of its employees, the defendants-appellees, after their positions were terminated as part of a university-wide

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-30585

consolidation. The district court granted summary judgment in favor of the defendants on all claims, which Muslow and Cunningham appeal. Finding that one of Muslow's and Cunningham's allegations of retaliation against their employer, the university, should have survived, we REVERSE in part the district court's summary judgment. We otherwise AFFIRM the judgment of the district court and REMAND the case for further proceedings consistent with this opinion.

## I.

Plaintiffs-appellants Katherine Muslow and Meredith Cunningham ("Plaintiffs") served the Louisiana State University Health Sciences Center in New Orleans ("LSUHSC") as, respectively, General Counsel from 2002 to 2019 and part-time staff attorney from 2014 to 2019. LSUHSC houses the Louisiana State University system's schools of medicine, dentistry, and public health, among others, and is governed by the Board of Supervisors for Louisiana State University and Agricultural and Mechanical College ("LSU"). In mid-2019, Plaintiffs' positions were retired from LSUHSC as part of LSU's consolidation of its legal team, and this employment dispute arose shortly thereafter.

LSU formally began its consolidation of all legal positions outside of the LSU Office of General Counsel ("OGC"), including Muslow's and Cunningham's positions at LSUHSC, with its December 10, 2018 revision of Permanent Memorandum-72 ("PM-72"), which provided that "University employees with legal degrees, but working outside of the Office of General Counsel, are not authorized to provide legal advice to or on behalf of [LSU]." However, Muslow was aware of this consolidation as early as August 6, 2018, when she received a message discussing the imminent integration of LSUHSC legal functions into OGC, of which she made Cunningham aware the next day. Thomas Skinner, Vice President of Legal

2

Affairs and General Counsel at OGC, later contacted Muslow on December 19, again notifying her of the consolidation and outlining the plan to transition her position to OGC at the same compensation level she received at LSUHSC. Several weeks later, on January 8, 2019, Plaintiffs met with Skinner and Carlton "Trey" Jones, III, OGC Deputy General Counsel, to discuss the consolidation and their upcoming transfer to OGC.

On January 18, OGC's business manager reached out to Muslow and Cunningham to facilitate the transfer of their positions to OGC. They were informed that, to get set up in LSU's system, they would "have to go through the entire recruiting process, from the job application through collecting all of the documents required for new employees." As part of that process, they would have to provide "[a] transcript and completed employment contract" "to move forward with processing the Hire transaction." On January 22, Plaintiffs were provided with unexecuted employment contracts for signature that listed effectives dates of February 1, 2019. The contracts offered Muslow and Cunningham appointments at the same rank they held at LSUHSC and the same salary: $227,520 for Muslow and $76,500 for Cunningham at 60% part-time employment.

Muslow and Cunningham submitted the requested job applications but did not execute their employment contracts. This was despite multiple reminders from OGC's business manager, including a February 12 message to Cunningham—which Cunningham shared with Muslow—that LSU was "trying to time the termination and hire transactions so there is not a lapse in pay or benefits." Instead, Muslow emailed Skinner on February 15, copying Cunningham, and requested that Plaintiffs' salaries be revisited before they executed the proposed employment contracts. She asked that, based on the findings of LSUHSC's 2017 Unclassified Employee Market Study (the "Study"), their salaries should be increased to $375,000 for Muslow and to $204,748 (at 80% part-time employment) for Cunningham.

No. 22-30585

The Study had been conducted by LSUHSC in 2017 to evaluate and update the pay structure for unclassified positions such as those then held by Muslow and Cunningham. As part of the Study, LSUHSC created a job worth hierarchy wherein every unclassified position was assigned a relative pay grade within the LSUHSC pay grid, which defined the amount of pay an employee would receive. Positions were also categorized, based on certain characteristics, into "job families": jobs within each family purportedly required "similar knowledge, skills and abilities (competencies)."

The Study placed the staff attorney position in the "Administrative Professional Non-Clinical" job family and the N37 pay grade, corresponding to a salary range of $119,736 (minimum), $162,242 (midpoint), and $204,748 (maximum). As a staff attorney, Cunningham was tasked with providing or assisting in the provision of legal counsel to LSUHSC; participating and assisting in litigation; reviewing, preparing, and approving contracts; assisting in reviewing, drafting, and modifying policies and procedures; and assisting in developing training materials and conducting training on legal matters. The position required a Juris Doctor degree and membership in, or eligibility for admission to, the Louisiana State Bar, as well as five years of relevant legal experience. Cunningham's annualized salary at the time of the Study, $127,500, exceeded the N37 pay grade minimum.

The General Counsel position was placed in the "Leadership" job family and the N43 pay grade, corresponding to a salary range of $227,520 (minimum), $315,116 (midpoint), and $402,711 (maximum). As General Counsel, Muslow had several responsibilities, including providing strategic support and legal guidance for LSUHSC; acting as advisor on legal matters; performing administrative filings; conducting research and analysis of current and critical legal issues; and working to ensure organizational compliance with federal, state, and local laws and regulations. She was required to possess a Juris Doctor degree, a license to practice law in

Louisiana, and three years' experience as a practicing attorney. As part of this role, she supervised one part-time attorney, Cunningham. At the time of the Study, Muslow earned $182,475, such that her salary did not meet her position's pay grade minimum. To correct this disparity, Muslow's base pay was increased to $227,520, the N43 pay grade minimum, effective July 1, 2017.

The Study was not the only support on which Muslow relied in making her request that her and Cunningham's salaries be revisited: she also stated in her message to Skinner that such salary adjustments were "overdue and necessary to ameliorate an environment at the [LSU]HSC that has not seemed historically to view equity as potentially a gendered issue." Three days—and only one business day—later, LSU rescinded both offers pending further review because, Muslow and Cunningham were told, "[n]o signed copy [of each respective employment contract] has been received and the effective date has passed."

On March 1, Muslow emailed Skinner and Larry Hollier, LSUHSC's Chancellor, requesting a status update regarding Plaintiffs' transfers to OGC. An hour later, Skinner emailed Hollier, restating OGC's plan to hire two OGC attorney positions to be stationed at LSUHSC and retire existing LSUHSC counsel positions and stating that Plaintiffs' offers were rescinded "after neither executed the [employment] contracts." He also indicated that OGC intended to advertise the General Counsel and staff attorney positions, for which Muslow and Cunningham could apply and would receive the same consideration as any other applicant. Hollier then forwarded Skinner's email to Plaintiffs and added that, "[i]n accordance with revised PM-72, [LSUHSC] will retire [its] existing legal positions by June 30, 2019." Muslow replied on March 6, reiterating her and Cunningham's position and seeking confirmation that they were "active candidates" for the OGC positions.

Several weeks later, Hollier again notified Muslow and Cunningham that their positions at LSUHSC would be retired and their employment terminated on June 30 and invited them to apply for the new OGC positions. Then, on March 26, Muslow filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC"). She stated her belief that she was discriminated against by LSU based on, *inter alia*, her gender and age. In her view, she was "historically underpaid compared to [her] male peers" as evidenced by the Study and her offer of transfer to OGC was rescinded after she "requested a salary review to bring [her] salary in compliance with the data" in the Study. In a supplemental letter to the EEOC, signed by Muslow and Cunningham, Plaintiffs indicated that Muslow's original submission was also brought on Cunningham's behalf. The letter also clarified that, as of March 26, "no steps to centralize [LSU's legal] operations ha[d] been taken (e.g., no meetings, plans for workflow, consolidation of documents, remote support to our campus, etc.)."

Plaintiffs never applied for the advertised OGC positions, and Muslow told Jones—after he asked if Plaintiffs would nonetheless like to be considered for the positions—that, "[u]nless [her] position [was] going to be compensated as dictated by the market study done at [LSUHSC], . . . you do not have my permission to treat me as an 'applicant' for a position I have held going on eighteen years now. [Cunningham] concurs." Cunningham's at-will employment eventually ended on June 30, and Muslow's employment ended on July 15. Following Muslow's termination, OGC hired Louis Colletta as LSUHSC Chief Counsel at an annual salary of $182,500, while the staff attorney position was never filled.

Muslow and Cunningham filed suit in the Eastern District of Louisiana on July 22, 2019, against LSU, Hollier, Skinner, and Jon Harman, LSUHSC's Vice Chancellor of Finance and Administration, with Jones later added as a defendant in an amended complaint (collectively, "Defendants").

No. 22-30585

Following motion practice, several claims remained at the summary judgment stage: (1) gender discrimination in violation of Title VII against LSU; (2) gender discrimination in violation of 42 U.S.C. § 1983 against Harman and Hollier; (3) gender discrimination in violation of the Equal Pay Act against LSU, Hollier, Harman, and Skinner; (4) retaliation in violation of Title VII against LSU; and (5) retaliation in violation of the Equal Pay Act against LSU, Hollier, Skinner, and Jones.

The district court granted summary judgment for Defendants on all counts. On appeal, Muslow and Cunningham argue that the district court erred in granting summary judgment in favor of Defendants on their various gender discrimination and retaliation claims. They also request that the case be reassigned on remand because the district court, in their view, improperly discredited evidence and expressed disdain for their claims.

## II.

We review the district court's grant of summary judgment *de novo*. *Watkins v. Tregre*, 997 F.3d 275, 281 (5th Cir. 2021). We shall affirm "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," FED. R. CIV. P. 56(a), viewing all evidence in the light most favorable to the nonmovant and drawing all reasonable inferences in that party's favor. *Watkins*, 997 F.3d at 281. At the same time, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Diaz v. Kaplan Higher Educ., L.L.C.*, 820 F.3d 172, 176 (5th Cir. 2016) (alteration in original) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

## III.

We first consider Plaintiffs' claims of gender discrimination against LSU, Harman, and Hollier under Title VII and 42 U.S.C. § 1983, and then

we consider their corresponding claims against LSU, Harman, Hollier, and Jones under the Equal Pay Act.

Title VII prohibits employers from intentionally discriminating against individuals with respect to compensation, terms, conditions, or privileges of employment because of their gender or membership in another protected class. 42 U.S.C. § 2000e-2(a)(1). Section 1983 has a wider reach, though it similarly prohibits parties acting under color of state law from violating federal anti-discrimination laws. *See Whiting v. Jackson State Univ.*, 616 F.2d 116, 121 (5th Cir. 1980). In this way, Title VII and § 1983 are "parallel causes of action" requiring essentially the same inquiry. *Lauderdale v. Tex. Dep't of Crim. Just.*, 512 F.3d 157, 166 (5th Cir. 2007). Both require that a plaintiff show, as part of her prima facie case, that she was a member of a protected class who was paid less than a non-member for work requiring "substantially the same responsibility." *Mitchell v. Mills*, 895 F.3d 365, 370 (5th Cir. 2018) (quoting *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008)). Then, pursuant to the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Taylor*, 554 F.3d at 522. Thereafter, the plaintiff must show that the employer's proffered explanation is pretextual. *Id.*

To satisfy her burden at the prima facie stage, a plaintiff must establish that her circumstances are "'nearly identical' to those of a better-paid employee who is not a member of the protected class." *Id.* at 523; *see also Mitchell*, 895 F.3d at 370–71. "In making this determination, a variety of factors are considered, including job responsibilities, experience, and qualifications." *Mitchell*, 895 F.3d at 371. These factors need not be identical for both the plaintiff and her proffered comparator, however, as such a requirement would be "essentially insurmountable"—"it would only be in the rarest of circumstances that the situations of two employees would be

totally identical." *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). This inquiry is often reserved for the factfinder, but only when a plaintiff has produced evidence sufficient for a reasonable factfinder to conclude that the plaintiff and her proffered comparator are similarly situated. *Morris v. Town of Indep.*, 827 F.3d 396, 402 (5th Cir. 2016). Otherwise, summary judgment is appropriate.

The district court held that Muslow and Cunningham failed to identify proper comparators, *i.e.*, male employees who were paid more for sufficiently similar work. Plaintiffs contend that this was in error, pointing to several individuals who were employed at LSUHSC at the same time as they were, who they believe are comparators. In support of their comparisons, Plaintiffs principally rely on the Study to demonstrate that they and their purported comparators were similarly situated, as well as limited references to the relative job experience or qualifications of specific male employees.

Muslow and Cunningham argue that, for purposes of Title VII, LSUHSC's Study is "important, if not dispositive." While the Study is instructive, it does not resolve whether Plaintiffs and their proffered comparators occupy nearly identical positions. We have previously held as much in *Brennan v. Victoria Bank and Trust Co.*, a case concerning an alleged pay disparity between male and female bank tellers brought under the equal pay provision of the Fair Labor Standards Act. 493 F.2d 896 (5th Cir. 1974). There, the record included the bank's internal assessment and classification of various bank teller positions; nonetheless, we could not determine whether pay discrimination was occurring based solely on the bank's own records. Instead, "the controlling factor in equal pay allocations *has to be job content*, not the job description prepared by the employer." *Id.* at 899 (emphasis added). We reiterated this point more recently in *Badgerow v. REJ Properties, Inc.*, where we recognized that it is not enough for a plaintiff to allege that she has the same job title as her purported comparator; rather, she must provide

"evidence of how her job duties compared to" those of a male employee in nearly identical circumstances. 974 F.3d 610, 617 (5th Cir. 2020). Of course, a court should not ignore the employer's rating of jobs, *see Victoria Bank*, 493 F.2d at 899, but such classifications are not enough, on their own, to demonstrate that another employee is a comparator under Title VII.

We must also look to the "job responsibilities, experience, and qualifications" of Muslow and Cunningham and their proffered comparators.[1] *Mitchell*, 895 F.3d at 371. Muslow puts forward eight individuals for consideration, four of whom the Study placed in higher pay grades than Muslow. With respect to Edwin Murray, Jimmy Cairo, and Demetrius Porche, the employees in lower pay grades than Muslow, she provides only a cursory analysis regarding their job responsibilities, experience, and qualifications insufficient to create a genuine dispute of material fact as to whether their positions are nearly identical to hers.

Muslow argues that Edwin Murray, LSUHSC's Vice Chancellor of Community and Multicultural Affairs, had two years of experience in his position while she had more than fifteen years as General Counsel. But Murray's position required significantly more starting experience than Muslow's—he was required to have 8–10 years of experience in an academic or governmental affairs setting and 3–5 years of experience in a senior level administrator position, whereas Muslow only needed three years of experience as a practicing attorney. She also contends that her position

---

[1] Muslow and Cunningham contend that at least some of the position descriptions provided by Defendants are "inaccurate, outdated, or otherwise suspect" but fail to describe which descriptions are erroneous and in what, if any, ways. By contrast, LSUHSC's compensation manager authenticated the provided descriptions and certified that each was in effect at the relevant time. Absent any specific objections by Plaintiffs, we find that the position descriptions proffered by Defendants are accurate and rely on them for our analysis throughout this section.

required a Juris Doctor degree, while his did not. However, this only underscores how different their roles were. His position required more years of work experience and a master's degree, and he was responsible for developing multicultural affairs programs and initiatives, serving as LSUHSC's Risk Management and Security Officer, and overseeing the management of the LSU Health Police staff. Muslow directs us to no evidence other than the Study to overcome the obvious differences between these positions and establish that Murray qualifies as a comparator. Regarding the other employees—Jimmy Cairo, then-Dean of the School of Allied Health, and Demetrius Porche, Dean of the School of Nursing— Muslow similarly points only to the Study, which by itself is insufficient. Accordingly, Muslow has failed to establish that these employees are appropriate comparators.

Muslow's analysis regarding the four male employees occupying higher pay grades is similarly perfunctory. By Plaintiffs' own logic, the Study's pay grade assignments indicate that the positions occupied by these male employees require greater knowledge, skills, and abilities. Importantly, the evidence also bears this out. Two of the individuals, Henry Gremillion and Dean Smith, served as Deans of LSUHSC's schools and were required to have doctoral degrees and at least ten years of experience, with some of that time in a managerial position in an academic setting. Muslow's only argument is that Smith was hired more recently than her; however, that is insufficient to make them proper comparators considering the significant differences between their positions. She also identified Keith Schroth, who served as LSUHSC's Associate Vice Chancellor for Business Development and Associate Dean of Fiscal Affairs, as a comparator despite his higher pay grade. She contends that his position, unlike hers, required no advanced degree, but his position required significantly more experience—eight years, at least two of which were in a management capacity—and carried different

responsibilities, including overseeing budgeting and contractual relations for each of LSUHSC's six professional schools and creating and negotiating business opportunities for LSUHSC. Her argument concerning her last purported comparator, John Harman, who was LSUHSC's Vice Chancellor of Administration and Finance, also falls short. Though he was hired more recently than her, his position, like many of the others, required significantly more experience and came with a host of distinct responsibilities, including directing the administrative and financial operations of LSUHSC. The district court did not err in finding that these employees' positions are not nearly identical to the position held by Muslow.

Muslow's final proffered comparator is her successor, Louis Colletta. She contends that he asked for and received a higher salary than she despite his lack of experience in an academic or healthcare setting. However, Colletta was hired as Chief Counsel of LSUHSC at a salary of $182,500, which is substantially less than Muslow's salary when she left LSUHSC and less than she was offered to transition to OGC. While he later became the Chief of Staff at LSUHSC, for which he was paid $249,000, that position required a different set of qualifications—10 years of administrative experience in senior leadership positions—and involved a different set of responsibilities—institutional planning and policy development; serving as the Chancellor's primary liaison with LSUHSC, government, and community leadership; and overseeing the Chancellor's organizational units. Muslow provides no analysis as to how the Chief of Staff position compares to her role as Chief Counsel, and there is no evidence suggesting that it is a proper comparator.

Cunningham offers two purported comparators: Richard Buhler, a Senior Contracts Administrative Officer, and Frank Wasser, LSUHSC's Compliance Officer. She argues that her staff attorney position required more credentials and more responsibility than Buhler's, over whom she

contends she had oversight, despite being paid less than him.  But his position required either a Juris Doctor degree and 5 years' related experience or a master's degree with 8 years' related experience—similar credentials to Cunningham's with greater prior experience.  His position's responsibilities were also significantly different from those of a staff attorney, as he assisted in managing the entire contracting process.  While one part of his position required him to "seek advice from LSUHSC legal counsel as appropriate and necessary so there will be no violation of state, or LSUHSC policy or procedure," this does not indicate that Cunningham had oversight of Buhler.  Rather, it demonstrates the differences between the two positions and their varied responsibilities: legal counsel was tasked with staying apprised of state law and LSUHSC policy and procedure, while a contracts officer developed, managed, and processed contracts on behalf of LSUHSC. Moreover, Cunningham's and Buhler's positions existed in distinct reporting structures: a staff attorney reported to the General Counsel, while a contracts officer reported to the Associate Vice Chancellor of Business Development. He is not a proper comparator.

Neither was Wassel's position nearly identical to that of a LSUHSC staff attorney.  Though both positions required a Juris Doctor degree, Wasser's position additionally required 8 years of professional-level experience at a top law firm, in-house legal department, or university.  And his responsibilities were significantly different: the Compliance Officer is tasked with developing and implementing a compliance plan, serving as the employee resource on compliance matters, and liaising with LSU Internal Audit, Legislative Auditor, and other oversight entities, among other duties. Cunningham held none of these responsibilities.

Because Muslow and Cunningham have failed to identify any male employees who were paid more than them for work requiring substantially the same responsibility, they have not established a prima facie case of

gender-based wage discrimination. Accordingly, the district court did not err in granting summary judgment in favor of LSU, Harman, and Hollier on Plaintiffs' Title VII and section 1983 gender discrimination claims.

Plaintiffs' Equal Pay Act gender discrimination claim falls short for the same reasons. The Equal Pay Act proscribes pay inequities between employees of opposite sexes "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions," except under certain enumerated exceptions. 29 U.S.C. § 206(d)(1). To establish a prima facie case of discrimination under the Equal Pay Act, a plaintiff must show that "(1) her employer is subject to the Act; (2) she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) she was paid less than the employee of the opposite sex providing the basis of comparison." *Badgerow*, 974 F.3d at 617 (quoting *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993)). Once a plaintiff has established a prima facie case, "the burden of proof 'shifts to the employer to show that the differential is justified under one of the Act's four exceptions.'" *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1136 (5th Cir. 1983) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974)).

For the same reasons that Plaintiffs' Title VII and section 1983 discrimination claims fail, so too does their discrimination claim under the Equal Pay Act. Here, Muslow and Cunningham rely entirely on the Study to establish which employees occupy positions requiring equal skill, effort, and responsibility and to argue that they were paid less money than male employees with jobs requiring less skill, effort, and responsibility. But the Study, without more, is insufficient to establish comparators.

Moreover, the Equal Pay Act has a "higher threshold" for potential comparators than Title VII—"it demands that equal wages reward equal

work." *Siler-Khodr v. Univ. of Tex. Health Sci. Ctr. San Antonio*, 261 F.3d 542, 546 (5th Cir. 2001). In other words, an employee who fails to qualify as a comparator under Title VII in a case of gender-based wage discrimination also fails to qualify as a comparator under the Equal Pay Act. Accordingly, the district court did not err in granting summary judgment in favor of LSU, Harman, Hollier, and Jones on Plaintiffs' Equal Pay Act discrimination claim.

## IV.

We next consider Plaintiffs' retaliation claims under Title VII against LSU and under the Equal Pay Act against LSU, Hollier, Skinner, and Jones, which allege that Muslow and Cunningham suffered from retaliation in response to their salary-review requests and filing of EEOC charges.

We analyze retaliation claims brought under either Title VII or the Equal Pay Act using the familiar *McDonnell Douglas* burden-shifting framework. *Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 469 (5th Cir. 2021). "To establish a prima facie case of retaliation, a plaintiff must 'demonstrate that: (1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action.'" *Id.* (quoting *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014)). The defendant must then provide a "legitimate, non-retaliatory reason" for the employment action. *Id.* at 470. If the defendant does so, the burden then falls to the employee to show that the employer's stated reason is a pretext for unlawful retaliation. *Gorman*, 753 F.3d at 171. "Under this framework, the employee's ultimate burden is to prove that the adverse employment action would not have occurred but for the protected conduct." *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 437 (5th Cir. 2022).

No. 22-30585

### 1. Prima Facie Case

Muslow and Cunningham present two allegations of retaliation: *first*, that they received letters notifying them of their positions' terminations only a few days after filing EEOC charges; and *second*, that their employment contracts with OGC were rescinded, and they were eventually terminated, after they raised gender-pay equity concerns to Skinner via email.[2]

Plaintiffs' first allegation—that they were first notified of their termination shortly after filing EEOC charges on March 26, 2019—is not supported by the evidence. On March 1, 2019, Hollier emailed Skinner, copying Muslow and Cunningham, and stated: "In accordance with revised PM-72, [LSUHSC] will retire our existing legal positions by June 30, 2019." The record reflects that Plaintiffs had actual notice of this message, as Muslow responded to it five days later on behalf of herself and Muslow. Thus, Muslow and Cunningham were notified that their LSUHSC positions would be terminated long before they filed EEOC charges; as such, there is no causal link between their alleged protected activity and the adverse employment action, and Plaintiffs have not presented a prima facie case of retaliation with respect to this allegation.

Plaintiffs' allegation relating to the salary-review request finds more support in the record. At this stage, Defendants' sole argument is that Muslow's request was not a protected activity because it was unreasonable

---

[2] Muslow and Cunningham briefly discuss a third allegation; namely, that they never received their requested pay increase. However, they provide no explanation regarding this alleged prima facie case of retaliation, nor do they appear to have raised it before the district court. Accordingly, we consider the argument forfeited and do not address it here. *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument by failing to raise it in the first instance in the district court . . . or by failing to adequately brief the argument on appeal.").

for Plaintiffs to believe that they were experiencing gender-based wage discrimination.

To qualify as a protected activity, "the employee's conduct must have 'opposed' the employer's practice and that opposed practice must have been unlawful." *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021). "Importantly, a plaintiff need not demonstrate that the practice was *actually* unlawful for his opposition to be a protected activity; rather, it is enough that the plaintiff *reasonably believed* the practice was unlawful." *Id.* at 1210. We hold that Plaintiffs' belief that LSUHSC unlawfully discriminated against them because of their gender was reasonable. In Muslow's February 15, 2019 email to Skinner, she laid out the reasons she believed LSUHSC, and LSU by extension, was unlawfully discriminating against them:

> The adjustments sought are not only equitable on their face given the 2017 study, but are also overdue and necessary to ameliorate an environment at the [LSU]HSC that has not seemed historically to view equity as potentially a gendered issue. By way of example: With my move to the OGC, there will be but one woman who directly reports to the chancellor and, like me, her salary has lagged far behind her male peers. Also like me, her salary was adjusted only to the bare salary minimum indicated in the 2017 equity study and she's not received an adjustment since.

That we conclude that Defendants did not discriminate against Plaintiffs does not negate their reasonable belief, based on these facts, that they received discriminatory wages on account of their gender. Moreover, although the district court was unable to locate it, the record reflects that Skinner understood Muslow's email to raise gender-pay equity concerns. Regarding Muslow's email, he stated at his deposition: "Did I read the letter as indicating that she had a problem with gender disparity in pay at Health Science Center New Orleans? Yes, that's what I took from that letter," and

that he "took it to mean . . . that there was a—potentially a pay disparity between males and females at [LSU]HSC." As the district court recognized, such testimony "seem[s] to corroborate that Plaintiffs' belief was objectively reasonable." Taken together, this evidence satisfies Plaintiffs' burden at the summary judgment stage to show that their salary-review request was a protected activity.

Defendants do not contest that the other elements of a prima facie case have been satisfied for Plaintiffs' salary-review-request allegation. We hold that Muslow and Cunningham have identified two adverse employment actions related to this allegation—the rescission of their employment contracts, and their eventual termination—and provided evidence linking such actions to their salary-review request. Accordingly, we find that Plaintiffs have established a prima facie case of retaliation with respect to this allegation.

## 2. Legitimate Non-Retaliatory Reason

Defendants offer several non-retaliatory reasons for the employment actions taken against Muslow and Cunningham sufficient to satisfy their summary judgment burden: LSUHSC positions were retired in favor of OGC positions; Plaintiffs did not execute their OGC employment contracts; Plaintiffs did not apply for the new OGC postings despite multiple invitations; and Muslow advised Jones that he did not have permission to treat her or Cunningham as OGC applicants. We agree with the district court that these are legitimate, non-retaliatory reasons for rescinding Plaintiffs' employment contracts and terminating their positions, which Muslow and Cunningham do not dispute. Thus, we must consider whether Plaintiffs have offered sufficient evidence of pretext.

### 3. Pretext

At this stage, Plaintiffs must establish that Defendants' asserted reasons for rescinding their employment contracts and terminating their positions are pretext for the real, retaliatory purpose. *Septimus v. Univ. of Hous.*, 399 F.3d 601, 608 (5th Cir. 2005). Ultimately, a plaintiff must provide substantial evidence that, but for her protected activity, she would not have been subject to the adverse employment action. *Id.*; *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 581 (5th Cir. 2020). "Even if a plaintiff's protected conduct is a substantial element in a defendant's adverse employment action, no liability for unlawful retaliation arises if the employee would have faced that discipline even without the protected conduct." *Wantou*, 23 F.4th at 437.

Muslow and Cunningham have not met this burden with respect to their termination from LSUHSC. The evidence establishes that Plaintiffs were aware of the plan to consolidate all legal services within OGC by December 2018. While they were told at that time that the transition would be administrative, Muslow and Cunningham do not dispute that they were required to go through the entire recruiting process, which included the submission of a "completed employment contract" before OGC could effectuate their hiring. As the district court recognized, Plaintiffs' "failure to execute the tendered employment contracts with OGC or to apply for the new OGC positions – despite being prompted and invited to do so multiple times – cemented their termination." Thus, it was inevitable that their positions would be terminated, and the salary-review request was not the but-for cause of their termination.

However, Muslow and Cunningham have provided substantial evidence regarding that their employment contracts at OGC would not have been rescinded but for the request for their salaries to be reviewed because of

gender-pay equity concerns. Upon review, it appears that the district court—and Defendants on appeal—treated the rescission of Plaintiffs' employment contracts and their later termination as a single adverse employment action and thus did not separately consider whether the salary-review request was the but-for cause of the contract recission. But these are their own adverse employment actions and must be considered separately.

Defendants offer only one non-retaliatory reason that Plaintiffs' employment contracts were rescinded: they were not executed by February 1, the effective appointment dates listed on the contracts.[3] Muslow and Cunningham offer substantial evidence that there was no deadline for executing the contracts. Notably, OGC continued to request that Plaintiffs execute the allegedly expired contracts after February 1, which calls into question Defendants' reason for rescinding the contracts. Moreover, Skinner explained at his deposition that the employment contracts were rescinded because he was "taken aback" by Plaintiffs' salary-review request. Given his admission that their request raising gender-pay equity concerns regarding the OGC salaries was the reason the contracts were rescinded, we hold that Muslow and Cunningham have presented evidence sufficient to overcome summary judgment on this allegation of retaliation.

### 4. Individual-Defendant Liability

Lastly, Hollier, Skinner, and Jones contend that they are not "employers" for purposes of the Equal Pay Act and thus cannot be held liable for Plaintiffs' retaliation claim.[4] Under the Equal Pay Act, an employee or

---

[3] Their other proffered reasons relate only to Plaintiffs' eventual termination, not the recission of Plaintiffs' contracts.

[4] LSU does not dispute that it was Plaintiffs' employer for purposes of the Equal Pay Act and Title VII claims brought against it.

former employee may seek legal or equitable relief for retaliation only against an employer. 29 U.S.C. § 216(b). We rely on the "economic reality test" when determining a party's status as an employer, under which we evaluate "whether the alleged employer: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014) (quoting *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012)). A plaintiff need not establish each element for us to find that a party was her employer, but she must, at the very least, establish that at least one of the factors is present. *Gray*, 673 F.3d at 357.

As an initial matter, Muslow and Cunningham do not allege that Hollier was involved in the recission of their employment contracts, which is the only alleged retaliatory action that we hold survives summary judgment. Accordingly, it was proper for the district court to grant summary judgment in favor of Hollier on Plaintiffs' retaliation claim.

That leaves Skinner and Jones, both of whom worked at OGC—and not LSUHSC—when Plaintiffs' employment contracts were rescinded. Muslow and Cunningham argue that Skinner had the power to "hire, fire, and control their work, particularly in early 2019 as they transitioned to the OGC." However, the transition to OGC, which would have given Skinner many of the powers considered by our test, never took place. Plaintiffs were still employed by LSUHSC when they were eventually terminated, and it was LSUHSC that ultimately fired them. Moreover, Muslow and Cunningham stated in their EEOC charge that, by the end of March, "no steps to centralize [LSU's legal] operations ha[d] been taken (e.g., no meetings, plans for workflow, consolidation of documents, remote support to [LSUHSC's] campus, etc.)." In short, by Plaintiffs' own admission, Skinner lacked the power to control their work. Accordingly, we hold that Skinner was not

Plaintiffs' employer for purposes of the Equal Pay Act and the district court properly granted summary judgment in his favor on Plaintiffs' retaliation claim.

Only Jones remains. Muslow and Cunningham argue only that "[h]e participated in decisions about their OGC transition and the later drafting of their termination letters, which were sent after they filed EEOC charges," and thus had control over them. These facts are insufficient to transform Jones into Plaintiffs' employer. Muslow and Cunningham do not allege that he had any decision-making power relating to their OGC transition, and his being one of several voices contributing to a decision—ultimately made by another individual—to terminate Plaintiffs does not transform him into an employer. Moreover, Jones' participation in the drafting of Plaintiffs' termination letters (and it is not clear that he participated, as Plaintiffs rely solely on Hollier's testimony that Jones *may* have provided input) does not establish that he had control over Muslow and Cunningham. Reviewing employment and termination letters is a regular part of legal counsel's responsibilities, and this does not transform legal counsel into the employer of every person whose termination letter he or she reviews. Like Skinner, we hold that Jones was not Plaintiffs' employer and summary judgment in his favor was proper.

Accordingly, the district court erred only by granting summary judgment in favor of LSU on Plaintiffs' Title VII and Equal Pay Act retaliation claims relating to Plaintiffs' salary-review request and the subsequent revocation of their employment contracts.

## V.

Muslow and Cunningham request that, on remand, we reassign the case because the district court improperly discredited their evidence and "expressed disdain" for their claims. Our power of reassignment "'is an

extraordinary one' and 'is rarely invoked.'" *Miller v. Sam Hous. State Univ.*, 986 F.3d 880, 892 (5th Cir. 2021) (quoting *Johnson v. Sawyer*, 120 F.3d 1307, 1333 (5th Cir. 1997)). Plaintiffs have provided no persuasive reason why we should invoke this extraordinary power, and we decline to do so.

\*     \*     \*

For the foregoing reasons, we REVERSE the judgment of the district court in favor of LSU on Plaintiffs' Title VII and Equal Pay Act claims alleging that LSU retaliated against Muslow and Cunningham by revoking their employment contracts following their salary-review request, and otherwise AFFIRM the judgment of the district court. We REMAND the case to the district court for further proceedings consistent with this opinion.

Jerry E. Smith, *Circuit Judge*, concurring in part and dissenting in part:

I respectfully dissent, but only in regard to retaliation. As to that issue, plaintiffs have transmuted baseless speculation about LSU's motive in rescinding their employment contracts into a "genuine" and "material" factual dispute. *See* Fed. R. Civ. P. 56(a). Instead, we should affirm the summary judgment in full. I otherwise concur in the thorough and impressive opinion.

The majority systemically—and correctly—recognizes plaintiffs' failure to carry their evidentiary burden on almost every claim. But its culling wrongly spares one stalk: plaintiffs' retaliation claim. The theory is that LSU rescinded plaintiffs' employment contracts effecting their transfer to the Office of the General Counsel ("OGC") because they had sent an e-mail requesting a salary increase and raising the issue of gendered pay disparity. The LSU employee primarily responsible for the rescission was Thomas Skinner, Vice President of Legal Affairs and General Counsel.

To survive summary judgment on retaliation, plaintiffs must establish a *prima facie* case. *Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 469 (5th Cir. 2021). If they succeed, LSU must offer a "legitimate, non-retaliatory reason" for the action. *Id.* at 470 (citing *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 171 (5th Cir. 2014)). The burden then shifts back to plaintiffs to show that the reason was pretextual. *Gorman*, 753 F.3d at 171.

I do not dispute that plaintiffs have made out their *prima facie* case. But the majority's well-intentioned treatment of LSU's proffered non-retaliatory reasons is unduly constrained and overlooks swathes of the record. It identifies "several" reasons proffered by LSU for the contract rescissions, including that plaintiffs' "positions were retired in favor of OGC positions; [p]laintiffs did not execute their OGC employment contracts; [p]laintiffs did not apply for the new OGC postings despite multiple invitations; and Mus-

low advised [the Deputy General Counsel] that he did not have permission to treat her or Cunningham as OGC applicants."

The majority proceeds to note that the district court's analysis on the retaliation claim was imprecise because it treated both the rescission of plaintiffs' contracts and their eventual termination as a single adverse employment action. The district court therefore jumbled the (potentially different) non-retaliatory reasons for each of the two employment actions. LSU makes the same mistake on appeal.

Fair enough. But that confusion was understandable, given that plaintiffs lumped their theories of adverse employment action together. The majority correctly disentangles the arguments about each of the employment actions but construes LSU's arguments too narrowly in light of the failure of *all* the parties to keep their analysis perfectly neat. After all, the university also contended that the salary demands themselves—rather than any allegation of pay disparity—provoked the contract rescission, pointing to Skinner's testimony about the salary-request e-mail. [1]

The record unequivocally corroborates that explanation. Skinner's deposition testimony—all sworn, none controverted—decisively answers the question of why plaintiffs' contracts were rescinded: The requested salary increases were unreasonable and logistically impossible (or nearly so). Describing the request in his deposition, Skinner said,

> But what became clear in that e-mail is that [Muslow's] salary expectations, or at least what she felt she should be entitled to, were significantly higher than what we had offered. And what

_____

[1] Even if we were inclined to impose the strictest requirements on LSU to present all of its arguments perfectly clearly in its appellate briefing, affirmance would still be warranted: "We are free to uphold the district court's judgment on any basis that is supported by the record." *Zuspann v. Brown*, 60 F.3d 1156, 1160 (5th Cir. 1995) (collecting cases).

we had offered was significantly higher than the range that our HR department in Baton Rouge had said would be appropriate for the position.

> . . . .

> . . . I was willing to [increase her salary] in order to ease the transition . . . . When Ms. Muslow came back and said [$]370[,000] or whatever the number was, I—literally, it stopped me in my tracks because this was not a minor difference in compensation. . . . This was a—this was over 50 percent higher than the salary that we had offered.

> . . . .

> . . . Paying the chief counsel in New Orleans $370,000, when that individual is a Baton Rouge employee, would have made that individual maybe the second-highest-paid employee on the Baton Rouge campus next to President Alexander.

> . . . This was, "Hey, I need to see what's out there and understand, if we can get somebody who is at least equally competent in the range that our folks are saying is supposed to be the range, then I'm not going to pay somebody $370,000 or $350,000."

Those statements are in exact accordance with Skinner's e-mail to the Chancellor of the Health Sciences Center explaining the situation: "On February 15, 2019, Ms. Muslow e[-]mailed me demanding significant salary increases for the new [attorney] positions, far in excess of the amounts authorized for the positions by LSU HR[]."

The explanation offered by Skinner is patently non-retaliatory. Muslow requested a salary increase from $227,500 to $375,000—a 64.8% increase. Likewise, Cunningham requested an increase from $127,500 to $204,748 (both annualized)—a 60.5% increase—in addition to a bump from 0.60 full-time equivalent to 0.80 full-time equivalent. The salary requests

were not just substantively significant:  They far exceeded the authorized compensation for the positions and would have "completely skew[ed] and destroy[ed] [LSU's] compensation structure in Baton Rouge."  As for Muslow's request, Skinner thought the gap was "insurmountable without some empirical evidence or proof of what it would take to hire a chief counsel in New Orleans or, for that matter, a chief counsel in Shreveport," only underscoring the point.[2]

The discussion should end there.  Skinner did not believe that a chief counsel—man *or* woman—was entitled to the salary Muslow requested.  Indeed, her male successor, Louis Colletta, earned $182,500 when he started—over $40,000 less than what Muslow was making at the end of her tenure. Identical reasoning applies to Cunningham, given Skinner's testimony and e-mail to the Chancellor (although her position is currently vacant).

The majority stresses that Skinner understood plaintiffs' e-mail to include an allegation of gender disparity in pay.  That's not in dispute, but it's also irrelevant:  The e-mail also contained a request for significant salary increases.  Moreover, the part of the e-mail requesting salary bumps identified both male and female comparators, and only the final few paragraphs of the e-mail mentioned anything about gender at all.  The majority appears to find it inconceivable that Skinner could have been aware of both facets of the e-mail but have been motivated by only one of them.  His deposition testimony eliminates any such doubts.

Taken at face value, the majority's reasoning unintentionally allows

---

[2] Skinner did not even take Muslow and Cunningham out of the running for the new positions.  They could still apply; he just was not going to agree to the huge increases without first determining whether the local labor market justified them.

any plaintiff to make absurd demands of her employer, gesture toward Title VII or the Equal Pay Act at the end of the request, and then survive summary judgment if the employer (reasonably) rejects the demands. The problems with that approach are clear even in this case. Skinner was pellucid on the basis for the rescissions: The requested salary increases were unreasonable and logistically nonviable. There is not a whiff of any retaliatory motive in the record. Nor do plaintiffs offer even a scintilla of evidence contradicting Skinner's claims or demonstrating that they were pretextual. In fact, they don't even mention them at all.

"[N]o liability for unlawful retaliation arises if the employee would have faced that [action] even without the protected conduct." *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 437 (5th Cir. 2022) (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 2002)). The question is whether LSU would have rescinded the contracts if plaintiffs had merely ended their e-mail before mentioning gender pay disparities at the end. The answer is clear from the record: Yes.

Plaintiffs therefore failed to establish a genuine dispute as to any material fact on their retaliation claims. Because defendants are entitled to judgment as a matter of law under our circuit's burden-shifting framework, the summary judgment should be affirmed across the board.